BEARDSLEY *against* SMITH.

An execution, issued on a judgment against a municipal body, being a *quasi* corporation, on a bond duly executed by that corporation, imposing a legal obligation upon it, and constituting a valid debt against it, may be levied upon, and satisfied out of, the private property of an individual member of the corporation.

In this state, the members of such a corporation are by law considered as parties, individually as well as in their corporate capacities, to suits by or against the corporation, and are individually liable for its debts.

Where the General Assembly of this state, on the application of the city of *B*, in 1838, passed an act, providing, that the securities that had been, or might be, issued by such city, should be obligatory on it, to all intents and purposes, and might be enforced and collected, in the same manner and to the same extent, that debts lawfully contracted by towns in this state, are enforced under the existing laws; in an action involving the validity of such provision, it was held, that it was not obnoxious to the objection that it authorized the taking of private property for public use, without compensation, or the seizure of the property of one person for the benefit of another, and was not, therefore, on either of these grounds, unconstitutional; the operation of such provision being merely to render the property of an individual liable to be taken for the satisfaction of a judgment and execution against himself, to which he was a party, and for which he, with the rest of the inhabitants of the city, was, in his own person or estate, independently of such provision, legally responsible.

The doctrine that the members of a *quasi* corporation are parties to suits by or against such corporation, does not affect the established rules of evidence, applicable to the competency or admissions of such members.

THIS was an action of trespass *de bonis asportatis*. The defendant justified the taking, by a special plea in bar; to which there was a general demurrer; thus presenting the whole case.

It is briefly this. In the action brought by *The Housatonuc Rail-Road Company* v. *The City of Bridgeport*, which came before this court, on a writ of error, (15 *Conn. R.* 475 to 503.) final judgment was rendered in favour of the original plaintiffs, for the amount of the bond and costs. An execution issued on this judgment, was put into the hands of the present defendant, a deputy sheriff, to be by him levied and collected. He, in the performance of this duty, levied on the goods mentioned in the declaration, which were the private property of the present plaintiff, a citizen of the city of *Bridgeport*, and sold them at the post, and applied the avails in satisfaction of the execution. The plea gave a detailed statement of the

facts in the case, from the incorporation of the city of *Bridge-port* to the return of the defendant on the execution ; but as all these matters, prior to the rendering of final judgment in the case referred to, appear in the report of that case, and as no question was made as to the regularity of the subsequent proceedings, provided the property in question was liable to be taken on the execution, a more particular statement of the allegations regarding such matters, seems not to be necessary here. It may be proper, however, to remark, that the execution, in point of form, followed the judgment, and directed the officer to levy it upon " the goods, chattels or lands of the said debtors," *viz. the Mayor, Aldermen, Common Council and Freemen of the City of Bridgeport.* (*a*) From the return on the execution, referred to in and appended to the plea, it appeared, that the defendant first demanded of the mayor, clerk and treasurer of the city, successively, payment of the amount due on the execution, which was refused ; that he then demanded of them estate belonging to the debtors, which they neglected and refused to exhibit ; that he then made diligent search throughout the city, and throughout his precincts, for such estate, but found none ; that he then demanded payment of sundry individuals, [naming them,] inhabitants and freemen of said city, who respectively refused and neglected to make such payment ; and that lastly, he made demand of the plaintiff, first, for payment of the amount due on the execution, then for estate belonging to said debtors, and finally for his own private property, which several demands the plaintiff neglected and refused to comply with ; and that the defendant then proceeded to take the goods in question, which he disposed of according to law, in satisfaction of the execution.

The case was reserved for the consideration and advice of this court as to what judgment ought to be rendered on the demurrer.

*J. A. Spencer* (of *Utica, N. Y.*) and *J. W. Huntington*, in support of the demurrer, after admitting, that the debt for the satisfaction of which the goods described in the declaration were taken, was a valid debt ; that the city, under its char-

(*a*) This is the name of the corporation given by the charter. *Priv. Stat.* 354.

*Fairfield,*
June, 1844.

Beardsley
*v.*
Smith.

ter, had power to lay a tax on its citizens for the payment of this debt ; and that the creditors might lawfully levy their executions on any property of the corporation they could find ; contended, That the private property of a member of the corporation could not be taken to satisfy a debt due from the corporation. In support of this general position, they insisted,

1. That the common law of *England* does not authorize the levy of an execution against a municipal corporation on the private property of an individual member. The parties to suits are natural persons and corporations ; the judgment, of course, is against the party ; and the execution follows the judgment. Now, is there any such thing known in *English* jurisprudence as the rendering of a judgment against one party, and the levying of an execution issued on that judgment, on the property of a different party ? Or will it be claimed, that an individual member of a corporation, is the same party as the corporation itself ? In the case of *Russell* v. *The Men of Devon*, 2 *Term R.* 667. 672, 3. Lord *Kenyon* said, that where an action is brought against a corporation for damages, those damages are not to be recovered against the corporators in their individual capacity, but out of their corporate estate ; and he considered it as a sufficient objection to the action in that case, that there was no corporation fund out of which satisfaction was to be made. *Ashhurst*, J. suggested another objection in that case, *viz.* that if damages were recoverable against the county, they must be levied on one or two individuals who had no means whatever of reimbursing themselves. The court of *King's Bench* decided, unanimously, against the action ; and treated it as an *experiment.* What would those learned judges have thought, if the plaintiff had claimed the right to levy an execution issued on a judgment against the county, as a corporation, on the private property of one of its inhabitants ? The remarks of Lord *Eldon* in *The Attorney-General* v. *The City of Exeter*, 2 *Russell*, 45. (3 *Cond. E. C. R.* 22. 26.) were *obiter dicta*, brought in incidentally, and are not sanctioned by the decision of his successor, Lord *Lyndhurst*. Vid. 10 *Conn. R.* 394. per *Bissell*, J.

2. That there is no common law or established usage in this state, authorizing the levy in question. It is true, that the

*Fairfield,*
June, 1844.

Beardsley
*v.*
Smith.

inhabitants of *towns* have been considered as individually liable for the small debts incurred in the ordinary administration of their affairs. The usage grew up when those alone who were to bear the burden, had the power to create it; and even then, the power was limited to definite objects. But the court will be careful not to extend the usage to cases not strictly analogous. Cities in this state, in the first place, are of modern institution. They are made up of a floating population, changing with the tides that flow and ebb on their shores. [To show the ground and extent of the usage, as it exists in *Massachusetts*, the counsel here referred to and commented on *Riddle* v. *The Proprietors of the Locks and Canals on Merrimack River*, 7 *Mass. R.* 169. 187. *Brewer* v. *New-Gloucester*, 14 *Mass. R.* 216. *The Merchants Bank* v. *Cook*, 4 *Pick*. 405. 414. *Ang. & Ames on Corp.* 23.] Secondly, another diversity between towns and cities, in relation to this point, is, that if the necessary expenses of a town are not provided for, the select-men are authorized by law to assess taxes sufficient for the payment of them; (*Stat.* 623. *tit.* 110. *s.* 9. ed. 1838.) and this duty they may be compelled, by *mandamus*, to perform. But no such authority or remedy exists in regard to cities.

3. That the resolve of 1838, if valid, did not authorize the seizure of the plaintiff's property. It clearly did not confer such authority *in terms*. Did it, by *a fair construction* of its provisions? It was passed on the petition of *the city of Bridgeport*, in its corporate capacity, seeking no such authority. It confirmed the proceedings of the *city* relative to the rail-road; it granted to the *city* power to adopt such measures as should be necessary and proper to carry those proceedings into effect; and finally, it declared that the *city* should be held liable to pay the instalments and the securities in question, which should be obligatory *on said city*, and might be enforced, in the same manner and to the same extent, that debts contracted by towns are by law enforced. It made these securities as binding on the city, as debts against towns are upon those corporations. But it is silent as the grave as to the private property of any individuals whatsoever. The remedy on these securities is by suit against the *city*; and the judgment and execution are against the *city*. If the resolve authorizes the taking of the private property of an individual

*Fairfield,*
June, 1844.

Beardsley
*v.*
Smith.

citizen to satisfy such judgment and execution, it is *by construction,* and a *forced* construction too. But a legislative provision thus invading private rights, ought to be construed *strictly.* The least that can be required of one claiming its aid, is, that he should bring himself within both its spirit and its letter.

The security of private property, one of the most important objects of civil government, is inconsistent with the right claimed by the defendant. If this claim is sustainable, the entire estate of an individual corporator may be swept from him, he may be broken up in his business, and his family turned into the street, for a debt which he did not contract and does not owe, to promote an object which he was never in favour of, but always opposed ; and all this, without any certain means of reimbursement. Is it said, that he may compel his fellow corporators to contribute ? This perhaps is doubtful : there are some *dicta* to the contrary. Corporators are not *partners.* But admit the right of action ; are there no difficulties in making it available ? Must the sufferer sue the corporation, or the corporators ? If the former, he sues a bankrupt, there being no funds ; if the latter, must he proceed against all, or may he pick his men ? What is ultimately to be the rule of contribution ? After the first difficulties have been surmounted, will not a new series spring up, and continue indefinitely ? He who has been compelled to pay more than his share, must resort to the same remedy, or be without remedy ; and so on, *toties quoties.* The resolve in question will not, surely, be made to produce such results, *by construction.*

4. That if the resolve in question, on the face of it, authorized the taking of the plaintiff's property, it was void, because the *purpose* for which such property was taken, was not *public,* as it regards the corporation. Whatever benefits the citizens of *Bridgeport,* as individuals, might expect to derive from the construction of the rail-road, the city, in its corporate capacity, was not to be benefitted thereby. *Haliburton* v. *Frankfort,* 14 *Mass. R.* 214. This, is, therefore, the naked case of taking the property of one individual, against his consent, and without compensation, to aid the business, personal accommodation, or other interest of other individuals. It is a flagrant act, subversive of the just principles of republican

liberty and of the social compact. It is contrary to natural justice, to reason and to common right. *Hooker* v. *The New-Haven and Northampton Company*, 14 *Conn. R.* 146. 152, 3. In the matter of *Albany Street*, 11 *Wend.* 149. 152, 3. *The People* v. *Morris*, 13 *Wend.* 328. *Bloodgood* v. *The Mohawk and Hudson Rail-Road Company*, 18 *Wend.* 14. 59. 62. *Varick* v. *Smith*, 5 *Paige*, 137.

5. That if the taking, which the resolve purported to authorize, was for *public use*, the resolve was still void, because it did not provide "just compensation." *Const. U. S. Amend. art.* 5. *Const. Conn. art.* 1. *s.* 11. Under this head, which was treated as the great point in the case, the counsel contended, first, that to justify the exercise of the right to take private property for public use, there must be a *necessity* of so doing, or an evident utility on the part of the public. 18 *Wend.* 14. 27. 4 *Ohio R.* 286. Here there is no necessity to subscribe for stock, to answer city purposes. Secondly, the "just compensation" contemplated by the constitution, is an *equivalent in value*—a *quid pro quo ;* and it must be certain. Here, the benefit to the *city*, is extremely doubtful ; and if the benefit to *individuals* is to be regarded, *that* is obnoxious to other objections : he who pays the most, may be the least benefitted ; and no provision is made, by commissioners or otherwise, to ascertain the benefit to each. [Other topics, some of which have already been suggested, were here urged and enforced.]

*Hawley* and *Dutton*, contra, remarked *in limine*, that so many of the obstructions thrown in the way of making the bonds in question available to the holders, had been prostrated and removed, by the decision of the court in *The City of Bridgeport* v. *The Housatonuc Rail-Road Company*, 15 *Conn. R.* 475. and the concessions of the plaintiff's counsel in this case, that there was now but a narrow strip of ground left for the contest. They then contended, 1. That independently of the resolve of 1838, cities, being territorial corporations for civil and political purposes, are to be regarded, with reference to the points of controversy in this case, as standing upon the same footing as towns; and the inhabitants of both are equally liable for the debts of the corporations to which they respectively belong. *Beers* v. *Botsford, 3 Day,*

*Fairfield,*
*June, 1844.*
_____

Beardsley
*v.*
Smith.

159.   *Atwater* v. *Woodbridge,* 6 *Conn. R.* 223.   *McLoud* v. *Selby,* 10 *Conn. R.* 390.   *Chase* v. *The Merrimack Bank,* 19 *Pick.* 564.   *Brewer* v. *New-Gloucester,* 14 *Mass. R.* 216. *Attorney-General* v. *The Corporation of Exeter,* 2 *Russ.* 45. (3 *Cond. E. C. R.* 22.)

2. That as a necessary consequence, a judgment against the city, is a judgment against its citizens ; and an execution issued on such judgment, may be levied on the property of such citizens, the true and proper debtors.   See the authorities above cited.

3. That the resolve of 1838, aside from any constitutional infirmity, made the inhabitants of the city of *Bridgeport* primarily liable for the very debts in question.   See the terms of that resolve, 15 *Conn. R.* 482.

4. That that resolve was not unconstitutional.   In the first place, the money was borrowed, the subscription for rail-road stock was made, and the securities were issued, by authority of *the freemen of the city,* in legal city meeting ; and a confirmation by the General Assembly was sought, and the confirming act was approved, by the same authority. 15 *Conn. R.* 477. *& seq.*   Secondly, the object of the citizens in these proceedings, was, to obtain *credit.*   They held themselves out to the world as individually liable.   Thirdly, the bondholders having advanced their money on these securities, as against *them* at least, the citizens are precluded from alleging *no just compensation.*   Fourthly, there is no ground in fact for such an allegation, there being an abundant fund for the remuneration of those citizens who are obliged to pay these bonds.   This fund is nothing less than the whole property of the city.   Lastly, this is not a case of taking one man's property to pay the debt of another, but to pay *his own debt.*   The The plaintiff has been a *party* to the proceedings throughout ; his voice has been heard in the city meetings ; he has had his day in court ; judgment has been rendered upon great deliberation, and execution has gone out, against him.   He has now nothing to complain of.

CHURCH, J.   In the late case of *The City of Bridgeport* v. *The Housatonuc Rail-Road Company,* 15 *Conn. R.* 475. this court decided, that the bonds and scrip issued by that

city to the *Rail-Road Company*, under the legislative resolution of 1838, were of full and perfect obligation.

Upon several of these bonds and coupons suits have been instituted, judgments rendered and executions issued against the city. With one of these executions, this defendant, as deputy-sheriff, made legal demand of the clerk, treasurer and mayor, and of several individuals, citizens of *Bridgeport*, and among others, of this plaintiff, for moneys and goods to satisfy the same, and upon refusal, he levied the writ of execution upon the goods of the plaintiff, in the manner stated by him in his return appended to his plea.

The demurrer to the defendant's plea of justification, presents to us the question, whether this execution against the city could be legally levied upon and collected from the private property of the plaintiff, who, when it was levied, was a freeman and inhabitant of said city? These bonds, imposing a legal obligation upon the corporation, and constituting a valid debt against it, may be enforced and collected, in the same manner as any other debt of the city may be contracted, for ordinary city purposes; unless the claim of the plaintiff can be sustained, that the resolution of the General Assembly, under which these bonds have been issued, is unconstitutional, so far as it professes to give authority to levy an execution against the city, upon the individual property of a citizen.

The plaintiff urges the unconstitutionality of that resolve, upon the ground, that it authorizes the taking of private property for public use, without compensation; or the seizure of the property of one person for the benefit of another, without his consent. And it must be conceded, that if such be the purpose or the effect of the resolve in question, it is unconstitutional and void.

We do not go into the question, whether, without the aid of this resolution of 1838, the defendant could have justified his levy upon the plaintiff's property, unless it be incidentally involved in this discussion. In the decision of the principal case before referred to, we intentionally left the question now raised unembarrassed, so far as the subjects of decision there were independent of the question here.

We know, that the relation in which the members of municipal corporations in this state have been supposed to stand,

*Fairfield,*
June, 1844.

Beardsley
*v.*
Smith.

in respect to the corporation itself, as well as to its creditors, has elsewhere been considered in some respects peculiar. We have treated them, for some purposes, as parties to corporate proceedings, and their individuality has not been considered as merged in their corporate connexion. Though corporators, they have been holden to be parties to suits by or against the corporation, and individually liable for its debts. Heretofore, this has not been doubted as to the inhabitants of towns, located ecclesiastical societies and school districts.

From a recurrence to the history of the law on this subject, we are persuaded that the principle and usage here recognized and followed, in regard to the liability of the inhabitants of towns and other communities, were very early adopted by our ancestors. And whether they were considered as a part of the common law of *England,* or originated here as necessary to our state of society, it is not very material to inquire. We think, however, that the principle is not of domestic origin, but, to some extent, was operative and applied in the mother country, especially in cases where a statute fixed a liability upon a municipality which had no corporate funds. The same reasons and necessity for the application of such a principle and practice, existed in both countries. Such corporations are of a public and political character: they exercise a portion of the governing power of the state. Statutes impose upon them important public duties. In the performance of these, they must contract debts and liabilities, which can only be discharged, by a resort to individuals, either by taxation or execution. Taxation, in most cases, can only be the result of the voluntary action of the corporation, dependent upon the contingent will of a majority of the corporators, and upon their tardy and uncertain action. It affords no security to creditors, because they have no power over it. Such reasons as these probably operated with our ancestors, in adopting the more efficient and certain remedy, which has been resorted to, in the present case, and which they had seen, to some extent, in operation, in the country whose laws were their inheritance.

The plaintiff would apply to these municipal or *quasi* corporations, the close principles applicable to private corporations. But inasmuch as they are not, strictly speaking, cor-

porations, but only municipal bodies, without pecuniary funds, it will not do to apply to them literally, and in all cases, the law of corporations. *Fourth School District* v. *Wood*, 13 *Mass. R.* 192.

The individual liability of the members of *quasi* corporations, though not expressly adjudged, was very distinctly recognized, in the case of *Russell* v. *The Men of Devon*, 2 *Term R.* 660. It was alluded to, as a known principle, in the case of *The Attorney General* v. *The City of Exeter*, 2 *Russ.* 45. applicable as well to cities as to hundreds and parishes. That the rated inhabitants of an *English* parish are considered as the real parties to suits against the parish, is now supposed to be well settled ; and so it was decided, in the cases of *The King* v. *The Inhabitants of Woburn*, 10 *East*, 395. and *The King* v. *The Inhabitants of Hardwick*, 11 *East*, 577. And in support of this principle, reference was made to the form of the proceedings ; as that they are entitled, "*against the inhabitants*," &c.

In the state of *Massachusetts*, from whose early institutions we have borrowed many valuable specimens, the individual responsibility of the inhabitants of towns for town debts, has been long established. Distinguished counsel, in the case of *The Merchants Bank* v. *Cook*, 4 *Pick.* 405., referring to municipal bodies, say, " for a century past, the practical construction of the bar has been, that in an action by or against a corporation, a member of the corporation is a party to the suit." In several other cases in that state, the same principle is repeated. In the case of *Riddle* v. *The Proprietors of the Locks and Canals on Merrimack River*, *Parsons*, C. J., in an allusion to this private responsibility of corporators, remarks, " and the sound reason is, that having no corporate fund and no legal means of obtaining one, each corporator is liable to satisfy any judgment obtained against the corporation." 7 *Mass. R.* 187. So in *Brewer* v. *The Inhabitants of New-Gloucester*, 14 *Mass. R.* 216., the court say, " as the law provides, that when judgment is recovered against the inhabitants of a town, execution may be levied upon the property of any inhabitant, each inhabitant must be considered as a party." In the case before referred to of *The Merchants Bank* v. *Cook, Parker*, C. J. expresses the opinion of the court upon this point, thus: " Towns, parishes,

precincts, &c. are but a collection of individuals, with certain corporate powers for political and civil purposes, without any corporate funds from which a judgment can be satisfied; but each member of the community is liable in his person and estate, to the execution which may issue against the body :— each individual, therefore, may be well thought to be a party to a suit brought against them, by their collective name. In regard to banks, turnpike and other corporations, the case is different." The counsel concerned in the case of *Mower* v. *Leicester*, 9 *Mass. R.* 247. without contradiction, speak of this practice of subjecting individuals, as one of daily occurrence. The law on this subject was very much considered in the case of *Chase* v. *The Merrimack Bank*, 19 *Pick.* 564. and was applied and enforced against the members of a territorial parish. "The question is," say the court, "whether on an execution against a town or parish, the body or estate of any inhabitant may be lawfully taken to satisfy it? This question seems to have been settled in the affirmative, by a series of decisions, and ought no longer to be considered as an open question."

The state of *Maine*, when separated from *Massachusetts*, retained most of its laws and usages, as they had been recognized in the parent state, and among others, the one in question. In *Adams* v. *Wiscasset Bank*, 1 *Greenl.* 361. *Mellen*, C. J. says, "it is well known, that all judgments against *quasi* corporations may be satisfied out of the property of any individual inhabitant."

The courts of this state, from a time beyond the memory of any living lawyer, have sanctioned and carried out this usage, as one of common law obligation; and it has been applied, not to towns only, but also, by legal analogy, to territorial ecclesiastical societies and school districts. The forms of our process against these communities have always corresponded with this view of the law. The writs have issued against the *inhabitants* of towns, societies and districts, *as parties*. As early in the history of our jurisprudence as 1705, a statute was enacted, authorizing communities, such as towns, societies, &c. to prosecute and defend suits, and for this purpose, to appear, either *by themselves*, agents or attorneys. If the inhabitants were not then considered as parties individually, and liable to the consequences of judgments

against such communities as parties, there would have been a glaring impropriety in permitting them to appear and defend, by themselves ; but if parties, such a right was necessary and indispensable.   Of course, this privilege has been, and may be, exercised.   1 *Sw. Syst.* 227.

*Fairfield,*
June, 1844.

Beardsley
*v.*
Smith.

Our statute providing for the collection of taxes, enacts, that the treasurer of the state shall direct his warrant to the collectors of the state tax in the several towns.   If neither this, nor the further proceedings against the collectors and the select-men authorized by the statute, shall enforce the collection of the tax, the law directs, that then, the treasurer shall issue his execution against the inhabitants of such town. Such an execution may be levied upon the estate of the inhabitants ; and this provision of the law was not considered as introducing a new principle, or enforcing a novel remedy, but as being only in conformity with the well known usage in other cases.   The levy of an execution under this statute, produced the case of *Beers* v. *Botsford* & al. 3 *Day*, 159. There, the execution, which had been issued against the town of *Newtown*, by the treasurer of the state, had been levied upon the property of the plaintiff, an inhabitant of that town, and he had thus been compelled to pay the balance of a state tax due from the town.   He sued the town of *Newtown* for the recovery of the money so paid by him.   The most distinguished professional gentlemen in the state were engaged as counsel in that case ; and it did not occur, either to them or to the court, that the plaintiff's property had been taken without right : on the contrary, the case proceeded throughout upon the conceded principle of our common law, that the levy was properly made upon the estate of the plaintiff.   And without this, the plaintiff could not have recovered of the town, but must have resorted to his action against the officer, for his illegal and void levy.   In *Fuller* v. *Hampton*, 5 *Conn. R.* 417. *Peters*, J. remarked, that if costs are recovered against a town, the writ of execution to collect them, must have been issued against the property of the inhabitants of the town ; and this is the invariable practice.   The case of *Atwater* v. *Woodbridge*, 6 *Conn. R.* 223. also grew out of this ancient usage.   The ecclesiastical society of *Bethany* had been taxed, by the town of *Woodbridge*, for its moneys at interest ; and the warrant for the collection of the tax had been levied upon

the property of the plaintiff; and the tax had thus been collected of him, who was an inhabitant of the located society of *Bethany*. *Brainard*, J., who drew up the opinion of the court, referring to this proceeding, said, " this practice with regard to towns, has prevailed in *New-England*, so far as I have been able to investigate the subject, from an early period—from its first settlement—a practice brought by our forefathers from *England*, which had there obtained in corporations similar to the towns incorporated in *New-England*." It will here be seen, that the principle is considered as applicable to territorial societies as to towns, because the object to be obtained was the same in both—"that the town or society should be brought to a sense of duty, and make provision for payment and indemnity"—a very good reason, and very applicable to the case we are considering.

The law on this subject was more distinctly brought out, and considered by this court, in the late case of *McCloud* v. *Selby*, 10 *Conn. R.* 390. 395. in which this well known practice, as it had been applied to towns and ecclesiastical societies, was extended and sanctioned as to school districts—else " it would be breaking in upon the analogies of the law." " They are communities for different purposes, but essentially of the same character." And no doubt can remain, since the decision of this case, but that the real principle of all the cases on this subject, has been, and is, that the inhabitants of *quasi* corporations are parties individually, as well as in their corporate capacities, to all actions in which the corporation is a party. And to the same effect is the language of the elementary writers. 2 *Kent's Com.* 221. *Angell & Ames on Corp.* 374. 1 *Sw. Dig.* 72. 794. 5 *Dane's Abr.* 158.

With this evidence of the law before us, until this time uncontradicted and undoubted, what else can we say, than to declare, that by the law of this state, each inhabitant of a town is a party to all suits prosecuted against it for the recovery of its debts; that each is liable to pay them; and that excutions for their collection may be levied upon the private estate of such inhabitants? That the same remedy may be pursued for the collection of the debts of cities, by reason of the analogies of the law, we cannot doubt.

The legislature, undoubtedly, when they passed the resolve of 1838, had the law in view, as we have now declared it;

and referred to it as being the law of the state, when they said, " and said instalments, and the notes, certificates, scrip or other securities, which have been, or may be, issued as aforesaid, shall be obligatory on said city, to all intents and purposes, and may be enforced and collected, in the same manner, and to the same extent, that debts lawfully contracted by towns in this state, are enforced, *under the existing laws* of the state."

Does this resolve authorize the taking of private property for public use, without compensation ; or does it authorize the seizure of the property of one person for the benefit of another ; and is it, for either of these causes, unconstitutional, as the plaintiff claims ?

To sustain this objection to the validity of the resolve, the plaintiff must be able to show the entire system which we have been discussing, to be unconstitutional in its operation upon the inhabitants of towns, societies and school districts ; and that what has so long been considered as undisputed law, is not law ;—and that our jurists have been, from the beginning, deceived, as to the extent and application of a plain constitutional provision. We cannot concede this. The resolution under consideration does not profess to confer greater powers upon the creditors of the city of *Bridgeport,* than the creditors of towns have always exercised. It subjects the inhabitants of cities and towns to the same law. Nearly every case on this subject, to which we have referred, in this state, *Massachusetts* and *Maine,* has been decided since the adoption of the constitutions of these states, securing the rights of property from public and private invasion, and while the constitutional privileges of the citizens have been carefully noticed and protected.

Besides, we understand the plaintiff, upon this argument, to admit, that under the taxing power of the city, his property could be legally taken and appropriated for the payment of these debts. The objection, then, is not so much, that his estate has been taken for public use, as to the manner in which this has been done. But the operation of the resolution of 1838, and of the law as it has always been received in this state, as we have seen, is not to take the property of an individual for public use, but to take it for the satisfaction of a judgment and execution against himself, to which he is a

party, and for which he, with the rest of the inhabitants of the city, is, in his own person or estate, responsible. There is no constitutional infirmity, therefore, in the resolve of Assembly, under which these bonds were issued, nor in the ancient law and usage of the state, which gave rise to it.

We are not insensible, that sometimes it is supposed, there is a power in courts to mould and fashion the law to suit some interested notions of justice, and even to dispense with its obligations, in cases supposed to bear hard upon individuals. We know of no such power. The law as it is—the law as we find it,—must be our only rule of decision, leaving to the legislature the exclusive exercise of the power of repeal or modification. But if we had any such authority, we are not convinced, that this case furnishes a proper occasion to exert it. The city of *Bridgeport*, with great deliberation and unanimity, and under the sanction of the General Assembly, has contracted a debt. The securities issued by the city, have been purchased, by *bona fide* holders, with its assent, and upon the faith of the city and the laws. No funds, either by taxation or otherwise, have been provided for payment. A right without a remedy, is not an admitted principle. We know of no other practical remedy, but the one to which this plaintiff has resorted ; and if this shall produce an equalized taxation of the inhabitants of the corporation, it will probably have the effect which our ancestors intended should be produced by it.

We ought perhaps, in conclusion, to remark, that some of our rules of evidence may well enough be thought to be at variance with the leading doctrine advanced in this opinion. For although, for the purposes here suggested, we consider the inhabitants of *quasi* corporations as parties to suits against the corporation, yet we do not receive their confessions or admissions in evidence against either the corporation or its other members ; and for reasons of necessity or policy, we admit such inhabitants as witnesses in behalf of the corporation.

For the reasons here suggested, we advise the superior court, that the defendant's plea in bar is sufficient, and that judgment thereon be rendered in his favour.

In this opinion the other Judges concurred.

Plea sufficient.